IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SCOT MILLER,                           )
                                       )
          Petitioner,                  )
                                       )
V.                                     )   Case No. 10 C 3604
                                       )   Hon. George W. Lindberg
DAVE REDNOUR[1], Warden,               )
Menard Correctional Center,            )
                                       )
          Respondent.                  )
                                       )

## MEMORANDUM OPINION AND ORDER

Before this Court is Scot Miller's ("Miller" or "petitioner") petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254 ("petition"). For the reasons set forth below, the petition is denied.

*I.    Introduction*

Following a 2002 bench trial, the state of Illinois convicted Scot Miller of first-degree murder and concealment of homicidal death for the death of thirteen-year-old Alonda Woodberry ("Alonda"). The trial judge sentenced Miller to concurrent prison terms of forty-five years for murder and five years for concealment. Miller is currently serving his sentence at Menard Correctional Center in Menard, Illinois.

Miller asserts five claims in his petition. His first three claims allege ineffective assistance of trial counsel because that counsel (1) without Miller's consent, urged the trial court not to convict Miller of any lesser-included offenses of first-degree murder, and failed to file a motion

---

[1] Dave Rednour, the current Warden at Menard Correctional Center, ("Respondent") is substituted for Donald Gaetz as the proper respondent in this case. RULE 2(A) OF THE RULES OF GOVERNING SECTION 2254 CASES IN THE UNITED STATES DISTRICT COURTS; FED. R. CIV. P. 25(d); *Bridges v. Chambers*, 425 F.3d 1048, 1049-1050 (7th Cir. 2005).

to suppress Miller's statement to police on the grounds that (2) Miller gave that statement after he invoked his right to counsel and (3) police did not have probable cause to arrest him. Miller's other two claims involve alleged ineffective assistance of appellate counsel because appellate counsel on his direct appeal and the appeal of his postconviction petition failed to argue that 725 ILCS 5/103-2.1 applied to Miller's case. As is discussed more fully below, Miller's petition is denied as to all five claims.

II.     Factual Background

The Court presumes that the state court's factual determinations are correct for the purposes of habeas review. 28 U.S.C. § 2254(e)(1). The facts relevant to Miller's petition follow. On March 12, 2000 around 11:00 p.m., Alonda and her friend Alma were at a bus stop at the corner of Division Street and Long Avenue in Chicago. Miller, then twenty-seven-years-old, drove to that corner in a gold Pontiac Bonneville, and said something to the girls. At Miller's trial, Alma testified that Miller asked Alonda if she wanted to smoke some marijuana and both girls then got into Miller's car. Miller drove Alma home and then drove off with Alonda still in the car. Alma called Alonda's house the morning of March 13, 2000 and learned that Alonda had not returned home the previous night.

Once at Miller's house, Alonda agreed to have sex with him for $50. Miller took the thirteen-year-old to his bedroom and they engaged in several sexual acts. Miller fell asleep and awoke to find Alonda taking $200 out of his pocket. Miller climbed out of bed and "got in the victim's face." Alonda then pushed Miller's hand away from her, and put the money in her pocket. In response, Miller pushed Alonda and she pulled a knife from her jacket. Miller grabbed her by the wrist so that the knife pointed downward, and turned her around so that her neck was in a headlock. Alonda began to yell and Miller said that the louder the she yelled, the tighter he

2

choked her. After about four minutes, Alonda stopped yelling, made a choking sound for about a minute, went limp, and fell to the floor. Miller said that he thought she had just passed out, but she was dead.

Miller left Alonda's body in his locked bedroom when he went to work the next morning. That evening, after he returned home from work and made sure the rest of his family was asleep, Miller removed Alonda's clothes, wrapped her in a blanket, and placed her in the trunk of his car. He also put a can of gasoline and a plastic bag with her clothes in the car. Then, Miller drove down Laramie Street and threw Alonda's knife and keys out of the car window. In an alley off North LeClaire Avenue, Miller put Alonda's body in a garbage can, with the gasoline, and lit it on fire. Miller put the bag of clothes in a different garbage can a couple of blocks away.

On March 14, 2000, police found Alonda's burning body. The next day, Alonda's mother filed a missing person report for her daughter. Detectives Butler and Navarette reviewed the report and contacted Alma. Alma gave the detectives a physical description of the driver of the gold Pontiac Bonneville.

On April 10, 2000, a DNA test positively identified Alonda's body. A week later, Alma identified Miller in a photo array as the man whose car she and Alonda got into the evening of March 12, 2000. On April 19, 2000, Detectives Butler and Navarette went to Miller's house, where they found him in the gold Pontiac Bonneville. The detectives informed Miller that they were investigating a homicide, and asked him to accompany them to the police station. On the way to the station, Miller tried to speak to the detectives, but they told him not to speak until they arrived at the police station. Once at the police station, the detectives placed Miller in a locked interview room for approximately fifteen minutes and took his driver's license. Miller was not handcuffed, but he was also not free to leave.

3

Detectives Butler and Navarette interviewed Miller and informed him that they were investigating Alonda's death. They told Miller that they believed Alonda had been abducted. Miller indicated that he had heard about the incident. Then, Detective Butler read Miller his Miranda rights, and Miller stated that he understood his rights and agreed to speak to the detectives. Detective Butler informed Miller that his photograph had been identified in a photo array, and that a witness saw Alonda in Miller's car the night she disappeared. Thereafter, Miller signed a consent form to search his vehicle.

The detectives told Miller that Alonda's body had not been completely burned and that her pelvic region was intact and contained bodily fluids. Detective Butler then told Miller that his DNA would be compared to the evidence from the body to either positively identify, or exclude him. At that point, Miller admitted to the detectives that he knew what they were talking about, and he positively identified a picture of Alonda. Miller admitted to paying Alonda for sex, and awaking to find her searching his pockets for money. He then described how Alonda pulled out a knife and how he subsequently strangled her, for fear that her screaming might wake his parents.

After his conviction, Miller filed a motion to reconsider that the trial judge denied. On direct appeal, Miller argued that: (1) he was denied effective assistance of trial counsel; (2) the state failed to prove him guilty beyond a reasonable doubt; (3) the trial court erred in granting the state's motion to strike certain testimony; (4) his sentence was excessive; and (5) the mittimus incorrectly reflected the number of days of credit he had received. On June 30, 2005, the Illinois Appellate Court affirmed Miller's conviction, but ordered the mittimus corrected.

Thereafter, Miller filed a petition for leave to appeal ("PLA") to the Illinois Supreme Court. In the PLA, Miller asserted that the Illinois Appellate Court's decision on his direct appeal contradicted the holding in *People v. Brocksmith*, 162 Ill. 2d 224, 642 N.E.2d 1230 (1994). The

PLA was denied on September 27, 2006. Miller's motion for leave to proceed in forma pauperis and Petition for Writ of Certiorari to the United States Supreme Court were also denied.

On October 9, 2007, Miller filed a petition for postconviction relief that the trial court dismissed three weeks later. Miller appealed that decision, claiming that he was entitled to appellate review because the trial court failed to evaluate his *pro se* postconviction petition under the first stage requirements set out in *People v. Hodges.* When that petition was denied, Miller filed a postconviction PLA to the Illinois Supreme Court. After that PLA was denied, Miller filed the instant federal habeas petition.

III.     *Analysis*

"Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a petitioner is entitled to habeas relief when a decision of the state court is 'contrary to' or 'an unreasonable application of' clearly established federal law as determined by the United States Supreme Court." *Burr v. Pollard*, 546 F.3d 828, 831 (7th Cir. 2008) (quoting 28 U.S.C. §2254(d)(1)). "A decision is 'contrary to' Supreme Court precedent when it relies on a rule that conflicts with that precedent or reaches a different result in a similar case." *Burr*, 546 F.3d at 831. "A state court unreasonably applies clearly established law if it 'identifies the correct governing legal principle…but unreasonably applies that principle to the facts of the prisoner's case.'" *Id.* (quoting *Williams v. Taylor*, 529 U.S. 362, 413 (2000)). Error alone is not sufficient. *Burr*, 546 F.3d at 831. The state court's decision must be "objectively unreasonable." *Id.*

In order to present a viable claim for federal habeas review, the petitioner must establish that he exhausted all applicable state court remedies and his claims are not procedurally defaulted. *See* 28 U.S.C. §2254(b). With respect to exhausting all state court remedies, "the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with

5

powers of discretionary review), thereby alerting that court to the federal nature of the claim."
*O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). A federal court is precluded from reaching the merits of a claim in a §2254 petition based on procedural default if the claim "was presented to the state courts and the state court ruling against the petitioner rests on adequate and independent state-law procedural grounds," or the claim "was not presented to the state courts and it is clear that those courts would now hold the claim procedurally barred." *Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004) (citing *Coleman v. Thompson*, 501 U.S. 722, 735 & n. 1 (1991). "Thus, when the habeas petitioner has failed to fairly present to the state courts the claim on which he seeks relief in federal court and the opportunity to raise that claim in state court has passed, the petitioner has procedurally defaulted that claim." *Id.* There is a limited equitable exception to a procedural default if the petitioner can demonstrate that an external impediment blocked him from asserting his federal claim in the state court and actual prejudice resulted therefrom. *Perruquet,* 390 F.3d at 514-15.

Respondent urges this Court to dismiss all five of Miller's claims as procedurally defaulted. Respondent further contends that Claim Five is non-cognizable on federal habeas review, and that even if the other four claims had not been procedurally defaulted, they should be denied on the merits. The Court addresses each claim in turn.

 A. *Claim One*

In Claim One, Miller argues that his trial counsel was ineffective for urging the trial court, without Miller's consent, not to convict him of any lesser-included offenses of first-degree murder. The respondent contends that this claim is procedurally defaulted because Miller did not fairly present a federal constitutional basis for this claim in his PLA to the Illinois Supreme Court on direct review. Alternatively, respondent argues that Claim One should be denied

6

because the Illinois Appellate Court already rejected this claim and its decision was not an unreasonable application of *Strickland v. Washington*, 466 U.S. 668 (1984).

As stated above, in order to avoid a procedural default, Miller must show that he "fully and fairly" presented this claim to the state courts. *Anderson v. Benik*, 471 F.3d 811, 814 (7th Cir. 2006). "Fair presentment requires the petitioner to give the state courts a meaningful opportunity to pass upon the substance of the claims later presented in federal court." *Rodriguez v. Scillia*, 193 F.3d 913, 916 (7th Cir. 1999). In his PLA on direct appeal, Miller did not present this claim in terms of ineffective assistance of counsel. Instead, Miller only cited to state case law and argued that the appellate court had misapplied the Illinois Supreme Court's holding in *People v. Brocksmith*, 162 Ill.2d 224 (1994).

In deciding whether Miller fairly presented his federal claim in the PLA, the Court considers: "(1) whether the petitioner relied on federal cases that engage in a constitutional analysis; (2) whether the petitioner relied on state cases which apply a constitutional analysis to similar facts; (3) whether the petitioner framed the claim in terms so particular as to call to mind a specific constitutional right; and (4) whether the petitioner alleged a pattern of facts that is well within the mainstream of constitutional litigation." *Anderson*, 471 F.3d at 815 (quoting *Ellsworth v. Levenhagen*, 248 F.3d 634, 639 (7th Cir. 2001)).

In his PLA on direct appeal, Miller did not cite to any federal cases and primarily relied on *Brocksmith*, a state court case in which the majority limited its analysis to other state court cases. 162 Ill.2d 224 (1994). Miller also did not frame his argument, or alleged a fact pattern in the PLA that would call to mind a specific constitutional right, or bring his argument within the mainstream of constitutional litigation. The issue Miller presented in the PLA was whether the appellate court contradicted the holding in *Brocksmith*. Miller did not argue that his trial counsel

7

provided ineffective assistance of counsel. According, this Court finds that Claim One is procedurally defaulted.

Even if Claim One was not procedurally defaulted, that claim would not be grounds for federal habeas relief. In denying Miller's direct appeal, the Illinois Appellate Court addressed, on the merits, the claim that Miller received ineffective assistance of counsel because his attorney did not consult him regarding whether to have the trial judge consider lesser included offenses. Applying the standard established in *Strickland*, the state appellate court found that Miller was not denied effective assistance of trial counsel. Because the Illinois Appellate Court's finding was not an unreasonable application of *Strickland*, Miller is not entitled to habeas relief on Claim One.

*B. Claim Two*

In Claim Two, Miller asserts that his trial counsel was ineffective for failing to file a motion to suppress his confession on the ground that Miller invoked his right to counsel prior to confessing. Miller claims that Court Two was not procedurally defaulted because he raised that claim at each stage of his postconviction proceeding. This Court finds that Claim two is not reviewable on a federal habeas petition because it was denied by the Illinois Appellate Court on an independent and adequate state ground.

Miller raised this suppression issue in his postconviction petitions to the state trial and appellate courts, and in his postconviction PLA. However, in reviewing Miller's postconviction petition, the Illinois Appellate Court found that Miller waived this argument because it could have been, but was not raised during his direct appeal. The appellate court's determination that an issue is waived is "an adequate and independent state ground," rendering the claim "unreviewable on federal habeas." *Sturgeon v. Chandler*, 552 F.3d 604, 611 (7th Cir. 2009).

8

### C. Claim Three

In Claim Three, Miller states that his trial counsel was ineffective for failing to file a motion to suppress his statement to police on the ground that the police lacked probable cause to arrest him. Miller concedes that he defaulted this claim because he did not properly raise it on direct appeal. Nevertheless, Miller argues that the default should be excused because the failure to raise the issue was the fault of his ineffective counsel during the direct appeal. The procedural problem with this argument is that "the assertion of ineffective assistance as a cause to excuse procedural default in a §2254 petition is, itself, a constitutional claim that must have been raised before the state court or be procedurally defaulted." *Smith v. Gaetz*, 565 F.3d 346, 352 (7th Cir. 2009) (quoting *Lee v. Davis*, 328 F.3d 896, 901 (7th Cir. 2003)).

Prior to filing the instant §2254 petition, Miller never claimed that his appellate counsel on direct appeal was ineffective for failing to argue trial counsel's ineffectiveness for not moving to suppress the confession. Accordingly, even if Miller could establish that his trial counsel was ineffective for failing to suppress his confession, that claim would still be procedurally defaulted because Miller did not present the ineffective assistant of appellate counsel issue to the state court. Therefore, this claim is procedurally defaulted. *See Smith*, 565 F.3d at 352.

### D. Claim Four

In Claim Four, Miller asserts that his appellate counsel on direct appeal was ineffective for failing to argue for the application of 725 ILCS 5/103-2.1 to his case. That section of the Illinois Code of Criminal Procedure involves electronic recording of custodial interrogations and was not enacted until 2003. The Illinois legislature expressly delayed the effective date of that section until July 2005 and the Illinois Supreme Court found that it should not be retroactively applied to criminal cases. *People v. Amigon*, 239 Ill.2d 71, 86 (2010).

Miller's disputed interrogation occurred on 2000 and he was convicted of murdering Alonda in 2002, before 725 ILCS 5/103-2.1 was enacted or took effect. Accordingly, the petition is denied as to Claim 4.

*E. Claim Five*

In his final claim, Miller asserts that his postconviction appellate counsel was ineffective. Ineffectiveness or incompetence of counsel during federal or state collateral postconviction proceedings is not a ground for federal habeas relief in a §2254 proceeding. 28 U.S.C. §2254(I). Accordingly, the petition is denied as to Claim 5.

*IV.    Conclusion*

For the reasons set forth above, Mr. Miller's petition for habeas corpus relief is denied in its entirety.

ORDERED:    Scot Miller's petition for writ of habeas corpus relief [1] is denied. All pending motions are denied as moot and this case is terminated.

Entered: *(signature)*
George W. Lindberg
Senior U.S. District Court Judge

Dated: August 4, 2011